UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NELDYN MOLINA DeLEON, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:15-CV-01106 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | JUNE 6, 2016 |
| Defendant. | : | |

**RULING RE: CROSS MOTIONS TO REVERSE (DOC. NO. 16) AND AFFIRM (DOC. NO. 17) THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

**I.      INTRODUCTION**

Plaintiff Neldyn Molina DeLeon ("DeLeon") has filed this action pursuant to section 405(g) of title 42 of the United States Code seeking an Order reversing the final decision of the Acting Commissioner of Social Security, defendant Carolyn Colvin ("Colvin"), that DeLeon is not entitled to Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act.  See Mot. to Reverse the Decision of the Commissioner ("Mot. to Reverse") (Doc. No. 16).  Colvin has filed a cross-Motion in which she asks the court to affirm the final decision denying DeLeon benefits.  See Def.'s Mot. for an Order Affirming the Decision of the Commissioner ("Mot. to Affirm") (Doc. No. 17).

For the reasons that follow, the court **GRANTS** DeLeon's Motion to Reverse (Doc. No. 16), **DENIES** Colvin's Motion to Affirm (Doc. No. 17), and **REMANDS** this case to the agency for proceedings consistent with this Ruling.

## II.  BACKGROUND

DeLeon is a 51 year old woman who moved to the United States from Puerto Rico in late 2011 or early 2012.  See Certified Tr. of the Record ("Tr.") at 36, 38 (Doc. No. 11).  She moved to the United States to obtain treatment and care for her son, a minor child with Down Syndrome.  See id. at 37, 45.  DeLeon does not speak English, but she can read and write in Spanish, and she completed one year of college in Puerto Rico.  See id. at 32, 38.  She has no work history to speak of.  See id. at 39.

On December 29, 2011, DeLeon filed an application for SSI benefits in which she alleged that she had become disabled on January 1, 2010.  See id. at 15.  Her application was denied on April 20, 2012.  See id. at 71.  DeLeon requested reconsideration of that decision, but her claim was again denied on April 18, 2013.  See id. at 76.  DeLeon requested a hearing before an Administrative Law Judge ("ALJ"), which was received by the Social Security Administration ("SSA") on April 26, 2013.  See id. at 79.

ALJ Robert A. DiBiccaro of the SSA's Office of Disability Adjudication and Review in New Haven, Connecticut, held a hearing on DeLeon's application for benefits on May 12, 2014.  See id. at 32.  DeLeon, who was represented by counsel, testified at that hearing through an interpreter.  See id.  She was the sole witness.  See id. at 32-49.  However, various medical records were submitted for ALJ DiBiccaro's consideration, most notably more than two years of treatment notes from providers at Cornell Scott – Hill Health Center ("Hill Health") in New Haven, Connecticut, which begin in 2012, shortly after DeLeon moved to the continental United States.  See id. at

316-502.[1]  In those treatment notes, Hill Health staff repeatedly record that DeLeon is complaining of pain in her back and neck; occasionally these notes also reference a possible psychiatric component to DeLeon's complaints.  See, e.g., id. at 456 (describing DeLeon as an "anxious looking female"); id. at 430 (stating that DeLeon has "pain in neck, unable to turn, has herniated disk (lower back) [and] arthritis in hands").  DeLeon's doctors at Hill Health prescribed her medications for her physical and mental impairments, see id. at 217 (medication list), and provided her with referrals for physical therapy, see id. at 340, and mental health therapy,[2] see id. at 464, 466.

In addition to the treatment notes from Hill Health, the Record before ALJ DiBiccaro included opinions from two consulting doctors, one of whom completed a Consultative Examination and Report, and the other of whom reviewed DeLeon's medical records as a nonexamining consultant.  The Consultative Examination was conducted by Frank Mongillo, M.D. ("Dr. Mongillo") on April 9, 2013.  See id. at 402.  In his Report on that examination, Dr. Mongillo notes he evaluated DeLeon for "pain in her lower back and diffuse arthritis and arthralgias," and ultimately concluded that DeLeon's "complaints seem somewhat out of proportion to her physical findings." Id. at 402-03.  However, Dr. Mongillo "question[ed] whether or not there is a psychiatric component to this patient's complaints" and opined that "a psychiatric evaluation might be helpful." Id.

---

[1] The Record also contains various notes and documents from doctors who treated DeLeon in Puerto Rico between 1994 and 2011.  See Tr. at 218-55 (Doc. No. 11).

[2] DeLeon's mental health therapy sessions were conducted by Jean Castillo, MSW.  See, e.g., Tr. at 466 (Doc. No. 11).  Ms. Castillo's notes indicate at multiple points that "[a] psychiatric evaluation will be schedule [sic] as soon as possible," id. at 458-63, but the Record does not contain any indication that such an evaluation was conducted or, if it was conducted, what the results of that evaluation were, see id.; see also id. at 22 (noting that "[a]lthough the claimant has considered a referral to a psychiatrist . . . the claimant has not yet presented for more intensive treatment").

3

at 403.  Dr. Mongillo's Report and DeLeon's other records were reviewed by nonexamining consultant Firooz Golkar, M.D. ("Dr. Golkar") on April 18, 2013.  See id. at 69.  Dr. Golkar concluded that DeLeon was not disabled, finding that her "condition results in some limitations in [her] ability to perform work related activities but does not prevent [her] from working," and that, although DeLeon had various exertional limitations, her "allegation of total disability [was] not supported by evidence in file."  Id. at 66, 69.  Dr. Golkar's report does not appear to address the effect, if any, of DeLeon's mental impairments on her ability to work.[3]

On the basis of the Record before him, on May 30, 2014, ALJ DiBiccaro issued a Decision denying DeLeon's SSI claim.  See id. at 9-25.  In particular, ALJ DiBiccaro applied the familiar five-step sequential test for determining disability and made the following findings:

1. DeLeon has not engaged in substantial gainful activity since the date on which she applied for SSI benefits;

2. DeLeon has severe impairments that include "degenerative disk disease; mild osteoarthritis; depressive disorder (rule-out major depressive disorder, recurrent, moderate); and anxiety disorder NOS (rule-out PTSD)";

---

[3] In fact, the Record contains virtually no evidence from acceptable medical sources, consultative or treating, regarding the existence and effect of DeLeon's mental impairments.  As noted above, Consultative Examiner Dr. Mongillo "question[ed] whether or not there is a psychiatric component to this patient's complaints" and opined that "a psychiatric evaluation might be helpful," Tr. at 403 (Doc. No. 11), but such an evaluation does not appear in the Record.  Thus, the bulk of the evidence related to DeLeon's mental impairments in the Record comes from Jean Castillo, MSW, who, as Colvin notes, does not appear to be "an acceptable medical source," Def.'s Mem. in Supp. of Her Mot. for an Order Aff'g the Commissioner's Decision ("Def.'s Mem.") at 9 (Doc. No. 17-1); 20 C.F.R. § 416.913(a), (d).

3. DeLeon "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1";

4. DeLeon has "the residual functional capacity to perform light work . . . except that she is limited to occasional contact with supervisors, coworkers, and the public"; and

5. "Considering [DeLeon's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [DeLeon] can perform . . . ."

Id. at 17-24.  On the basis of these findings, ALJ DiBiccaro ultimately concluded that DeLeon "has not been under a disability, as defined in the Social Security Act, since . . . the date the application was filed."  Id. at 25.

DeLeon timely requested review of ALJ DiBiccaro's decision by the Appeals Council.  See id. at 7.  The Appeals Council denied DeLeon's request for review on June 4, 2015, on the grounds that the Appeals Council "found no reason under [their] rules to review the Administrative Law Judge's decision."  Id. at 1-6.  Thus, the ALJ's decision became the final decision of Colvin in her capacity as Acting Commissioner of Social Security.  See Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) ("If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision.").  DeLeon timely challenged Colvin's decision to deny her SSI benefits by way of a Complaint initiating this action on July 23, 2015.  See Compl. (Doc. No. 1).  The pending Motions followed, and the issues were joined before this court on March 18, 2016.

**III.    LEGAL STANDARD**

In reviewing a Social Security disability determination, a court will set aside the decision of an ALJ "only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  As the Supreme Court has instructed, "substantial evidence . . . [is] more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted).  Rather, substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  Further, the substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact.  See Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998).

Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently.  See Eastman v. Barnhart, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).  In other words, "[w]here an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

**IV.    DISCUSSION**

DeLeon advances the following three claims of error in her pending Motion:

1. That the ALJ failed properly to develop the Administrative Record with respect to DeLeon's residual functional capacity and impairments;
2. That the ALJ failed properly to evaluate both DeLeon's credibility and her subjective claims of pain; and

3. That the ALJ erred by failing to call a vocational expert "to opine as to the availability of other jobs in the national or regional economy that" DeLeon could perform.

Mem. in Supp. of Mot. to Reverse the Decision of the Commissioner ("Pl.'s Mem.") at 17, 22, 29 (Doc. No. 16-1).  For the reasons that follow, the court concludes that DeLeon's first and third claimed errors entitle her to relief in the form of a remand for further proceedings consistent with this Ruling, and therefore does not reach the question of whether DeLeon is entitled to relief on the basis of her second claimed error.

DeLeon's first claimed error, namely that the ALJ failed adequately to develop the Record with respect to her residual functional capacity and impairments, primarily centers on the fact that there is no medical source statement from DeLeon's treating physicians in the Record, and the ALJ does not appear to have requested such a statement prior to ruling on DeLeon's claim.  See Pl.'s Mem. at 17, 18 (Doc. No. 16-1); see also Tr. at 23 (Doc. No. 11) ("The record does not contain an opinion from a treating source describing specific physical or mental functional limitations.").  It is well-settled that, "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).  "This duty exists even when the claimant is represented by counsel . . . ." Id.  The need to obtain medical source statements from a claimant's treating physicians is particularly acute, because SSA regulations give the opinions of treating physicians "controlling weight," so long as those opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in . . . [the] record." 20 C.F.R.

7

§ 416.927(c)(2); see also Lesterhuis, 805 F.3d at 88.  In other words, "the SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)).  "Even if the treating physician's opinion is contradicted by other substantial evidence, and so is not controlling, it may still be entitled to significant weight 'because the treating source is inherently more familiar with a claimant's medical condition than are other sources.'"  Tankisi v. Comm'r of Social Sec., 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting Schisler v. Bowen, 851 F.2d 43, 47 (2d Cir. 1988)).

Given the weight that is accorded statements from treating physicians, the SSA's regulations make clear that the Commissioner "will request a medical source statement about what [the claimant] can still do despite [the claimant's] impairments."  20 C.F.R. § 416.913(b)(6) (emphasis added); see Tankisi, 521 F. App'x at 33 (noting the regulations "seem[ ] to impose on the ALJ a duty to solicit such medical opinions").  However, the text of the regulation also indicates that "the lack of the medical source statement will not make the report incomplete."  20 C.F.R. § 416.913(b)(6).  The Second Circuit has interpreted these provisions to mean that "remand is not always required when an ALJ fails in his duty to request opinions, particularly where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity."  Tankisi, 521 F. App'x at 34 (collecting cases).  In other words, assessing whether it was legal error for an ALJ to fail to request a medical source statement from a claimant's treating physician is a case-specific inquiry.

The cases in which the Second Circuit has upheld an ALJ's disability determination notwithstanding the fact that the Record lacked a medical source statement from a treating physician are readily distinguishable from the current case. Often, Records that are deemed to be complete without a medical source statement from a treating physician contain notes that express the treating physician's views as to a claimant's residual functional capacity, i.e., the treating physicians' views can be divined from their notes, and it is only a formal statement of opinion that is missing from the Record.  See, e.g., Tankisi, 521 F. App'x at 34 (declining to remand on the basis of the ALJ's failure to obtain a formal opinion from a treating physician and noting that "although [the medical record] does not contain formal opinions on Tankisi's RFC from her treating physicians, it does include an assessment of Tankisi's limitations from a treating physician"); Whipple v. Astrue, 479 F. App'x 367, 370 (2d Cir. 2012) (noting that "[t]he ALJ had comprehensive medical notes from Dr. Roger Levine, Whipple's treating physician . . . [that] observed that Whipple was capable of working and that Whipple's depression and anxiety were manageable with medication").  In contrast to those cases, the Record in this case contains no indication of the views of DeLeon's treating physicians[4] as to her residual functional capacity in light of her physical and mental

---

[4] The Record does contain a form filled out by Tracy Summerer, a nurse who saw DeLeon at Hill Health, in which Summerer appears to express her belief that DeLeon could be available for work part-time, but also notes that DeLeon is unavailable "temporarily, can be available for work [when] determined by [physical therapy]."  Tr. at 313-314 (Doc. No. 11).  As DeLeon notes, this note is (1) sparse and unclear, as Summerer seems to have misunderstood the form she was using, which appears to be intended to explain why a caretaker is unavailable for work due to caretaking responsibilities, not why a person who is disabled cannot work due to her disability, and (2) filled out by a person (Summerer) who is not considered to be a medical source capable of establishing the existence of a medically determinable impairment under SSA regulations.  See 20 C.F.R. § 416.913(d); see also Pl.'s Mem. at 12 n.28, 17 (Doc. No. 16-1).  Thus, Summerer's note is not a substitute for opinions from DeLeon's treating physicians as to her residual functional capacity, and the presence of this form does not make the Record complete.

impairments. See Tr. at 316-502 (Doc. No. 11).  Given the contents of the rest of the Record and the directives of the SSA regulations and Second Circuit caselaw cited above, the court concludes that, in this case, it was error for the ALJ to "fail[ ] in his duty to request opinions" from DeLeon's treating physicians.  Tankisi, 521 F. App'x at 34. "This error, in turn, called into question the next step of the ALJ's analysis, in which the ALJ assessed, based on the claimant's perceived RFC, whether there were jobs in the national economy that she could perform."  Sanchez v. Colvin, No. 13 Civ. 6303 (PAE), 2015 WL 736102 at *9 (S.D.N.Y. Feb. 20, 2015).  This case must be remanded for further development of the Record to correct these errors.

Separately, the court also concludes that DeLeon is entitled to relief on the basis of her third claimed error, namely that remand is necessary because the ALJ may have erred by relying on the Medical-Vocational Guidelines ("the Grids") instead of calling a Vocational Witness to "opine as to the availability of other jobs in the national or regional economy that [DeLeon] could perform."  Pl.'s Mem. at 29 (Doc. No. 16-1).  The Second Circuit has made clear that "the ALJ cannot rely on the Grids if a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert."  Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013); see also Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) ("If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986)).  Thus, where nonexertional limitations coexist with exertional limitations, the ALJ must first assess "whether the range of work [a claimant] could perform [is] so significantly

diminished as to require the introduction of vocational testimony." Bapp, 802 F.2d at 606. Once this determination has been made, the ALJ can proceed to the ultimate determination of whether the claimant is disabled, relying either on the testimony of a vocational expert or on the Grids, as appropriate.

There is no question that, in this case, ALJ DiBiccaro determined that DeLeon has nonexertional, mental limitations that limit her ability to perform unskilled light work. In particular, ALJ DiBiccaro concluded that DeLeon is "limited to occasional contact with supervisors, coworkers, and the public" and that she has "moderate difficulties in social functioning" as well as "moderate difficulties" in "concentration, persistence or pace." Tr. at 19, 23 (Doc. No. 11); see also id. at 22 ("The assessed limitations to essentially simple work with only occasional social contact are sufficient to prevent workplace demands or social stress from triggering acute anxiety."). ALJ DiBiccaro applied the Grids to DeLeon's combination of exertional and nonexertional limitations, ultimately concluding that her mental impairments "have little or no effect on the occupational base of unskilled light work."[5] Id. at 24. At no point in his opinion did ALJ DiBiccaro assess the possible need for vocational expert testimony in this case.

ALJ DiBiccaro's failure to consider whether vocational expert testimony was needed is error necessitating remand. The facts of this case mirror those in Bapp, in which the Second Circuit noted that, "although . . . the ALJ found that [the claimant's] nonexertional impairments did not 'significantly diminish' the full range of light work that

---

[5] The court notes that this language is apparently boilerplate, as "numerous other ALJ decisions have recited verbatim the same language that the ALJ chose to use here," as well as the fact that "other courts have found this bare conclusion inadequate to avoid considering or relying on vocational expert testimony." Mattioli v. Commissioner of Social Sec., No. 3:14-cv-00182 (JAM), 2015 WL 4751046 at *5 (D. Conn. Aug. 11, 2015) (collecting cases).

11

he could perform . . . [the ALJ] did so in the context of the ultimate question, i.e. was Bapp disabled." Bapp, 802 F.2d at 606. The Bapp court concluded that the fact that "[t]he ALJ failed to consider the intermediate question—whether the range of work [the claimant] could perform was so significantly diminished as to require the introduction of vocational testimony," was error. Id. Thus, the Bapp court remanded the case for the ALJ to "reevaluate whether the Secretary has shown that plaintiff's capability to perform the full range of light work was not significantly diminished by his" nonexertional impairments, and that vocational expert testimony was therefore not required. Id. In the years since Bapp was decided, numerous courts have remanded disability appeals to the SSA in cases where the ALJ failed to complete Bapp's "intermediate step" of assessing the need for vocational expert testimony under circumstances like those presented by this case. See, e.g., Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (noting that it was error for the ALJ to "proceed[ ] directly to the ultimate question of disability without first considering whether further [vocational expert] testimony was necessary in light of [the claimant's] nonexertional impairments"); Lugo v. Colvin, No. 13-cv-1767 (JPO), 2014 WL 5045630 at *1 (S.D.N.Y. Oct. 9, 2014) (adopting Magistrate Judge's determination that the ALJ "committed legal error by skipping Bapp's intermediate step" and remanding the case to the agency); Hernandez v. Colvin, No. 13-cv-03035 (RPP), 2014 WL 3883415 at *15 (S.D.N.Y. Aug. 7, 2014) (remanding to the agency a case in which the ALJ "did not elaborate on or explain her conclusion that the Plaintiff's non-exertional impairments were not significant enough to warrant vocational testimony"). This court likewise concludes that remand is required in this case to afford the ALJ an opportunity explicitly to address Bapp's intermediate question,

namely whether DeLeon's nonexertional impairments have "any more than a 'negligible' impact on [DeLeon's] ability to perform the full range of work" such that "the testimony of a vocational expert" is required. Selian, 708 F.3d at 421.

Because the court concludes that DeLeon first and third claims of error entitle her to relief in the form of a remand, further development of the Record in accordance with this Ruling, and a new determination by an ALJ as to whether she is entitled to disability benefits, the court need not address DeLeon's second claimed error, namely that the ALJ failed properly to evaluate her credibility and claims of pain. See Pl.'s Mem. at 22 (Doc. No. 16-1).

Finally, the court notes that the parties have agreed that a portion of the Record concerns an individual other than DeLeon. See Def.'s Mem. at 11 (Doc. No. 17-1); see also Pl.'s Mem. at 5 (Doc. No. 16-1). Colvin has asked for permission to prepare and submit a Record that omits those documents. See Def.'s Mem. at 11 (Doc. No. 17-1). The court grants this request and notes that, on remand, Colvin should ensure that these documents are removed from the Record and not considered by the ALJ.

## V.   CONCLUSION

For the foregoing reasons, DeLeon's Motion to Reverse the Decision of the Commissioner (Doc. No. 16) is **GRANTED**. Colvin's Motion to Affirm the Decision of the Commissioner (Doc. No. 17) is **DENIED**. The case is remanded to the agency for further proceedings in which the ALJ develops the Record, weighs the evidence, determines whether the testimony of a vocational expert is required, holds another hearing if necessary, and issues a new decision.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 6th day of June, 2016.

                                                /s/ Janet C. Hall
                                               Janet C. Hall
                                               United States District Judge